# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICARDO GARZA, | ) 1:11-cv-0625 LJO BAM |
| | ) |
| Plaintiff, | ) **FINDINGS AND RECOMMENDATIONS** |
| | ) **REGARDING PLAINTIFF'S** |
| v. | ) **SOCIAL SECURITY COMPLAINT** |
| | ) |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## BACKGROUND

Plaintiff Ricardo Garza ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying his application for supplemental security income ("SSI") benefits and disability insurance benefits pursuant to Titles II and XVI, respectively, of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Barbara A. McAuliffe, for findings and recommendations to the District Court.

## FACTS AND PRIOR PROCEEDINGS[1]

Plaintiff filed an application for Social Security Disability Insurance Benefits and Supplemental Security Income on April 24, 2007, alleging disability beginning December 1, 2002.

---

[1] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

1

AR 133. Plaintiff's applications were denied initially and on reconsideration. AR 58-74. Subsequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). AR 68. ALJ Christopher Larsen held a hearing on October 7, 2009, and issued an order denying benefits on December 14, 2009. AR. 12-23. The Appeals Council issued a decision affirming the ALJ's order. AR 1-3.

**Hearing Testimony**

ALJ Larsen held a hearing in Fresno, California, on October 7, 2009. AR 28. Plaintiff personally appeared and was assisted by attorney Jeffrey Milam. AR 28-57. Vocational Expert ("VE") Kenneth Ferra also testified.

Plaintiff was fifty-two years old at the time of the hearing. AR 32. Plaintiff is not married and has three adult children. AR 33, 133. Plaintiff lives in a rented house with others that he pays for from general relief (i.e., welfare). AR 33-34. Plaintiff graduated from high school, but while in school he was enrolled in special education classes and he now has a very limited ability to read and write. AR 25.

Plaintiff testified that he was injured in 2006, when he was working as a mover for Mayflower Moving Company. According to Plaintiff, he was carrying a sofa down the stairs when another mover turned the sofa the wrong way, causing him to injure his back.[2] Plaintiff was later involved in a car accident which injured his knees. AR 45.

The ALJ asked Plaintiff his height and weight. Plaintiff testified he is 5'3 and 232 pounds. AR 38. In the last five years, he has gained approximately 40 to 50 pounds due to problems with his knees. AR 38. According to Plaintiff, he can no longer do the physical activities he was once able to do. AR 38.

When asked about his ability to work, Plaintiff stated that he was unable to work a full-time job, five days a week, due to spasms in his knees, sides, and lower back. AR 39. When Plaintiff was asked what other medical problems would keep him from working he replied, "That's basically

---

[2] The record is not entirely clear, but Plaintiff received some workmen's compensation for his work related injury before his claim was dropped due to the statute of limitations. AR 45.

2

about it." AR 39. Plaintiff reported experiencing knee pain "[c]onstantly." AR 40. He said that he cannot drive long distances because his knees bother him. AR 35.

When asked about his medical problems, Plaintiff testified that he has difficulty sleeping and used a CPAP machine for sleep apnea. AR 39. Plaintiff also testified that he has asthma and has used a cane for about two years whenever he is on his feet. AR 39-40. Plaintiff's doctor did not recommend that he use a cane, but according to Plaintiff his doctor feels his use of a cane is a good idea. AR 40. Plaintiff stated that he needed to use a cane because he experiences constant pain and swelling in his knees. AR 40. He also experiences constant back pain. Plaintiff testified that with his cane, he can only be on his feet for about ten minutes at a time. AR 41. He can sit in a chair for about twenty minutes before he has to get up. AR 41. Plaintiff has to elevate his knee for approximately two hours everyday and rests on his side for ten to fifteen minutes around three or four times a day. AR 43.

With respect to daily activities, Plaintiff has a driver's license, but he states that he does not drive long distances because signs often confuse him and it often bothers his knees. AR 35. Plaintiff stated that he drives to the store about three times a week, tries to take the garbage out daily, and that he can take up to half a day to mow his yard. AR 34, 47. Plaintiff testified that he was unable to spell anything other than his name and that he cannot read well enough to read a newspaper. AR 33-34.

Thereafter, the ALJ elicited the testimony of vocational expert Ken Ferra. AR 53-55. The VE stated that Plaintiff's past work was classified as furniture mover and driver, which was "very heavy" semi-skilled work. AR 53. The VE was asked to consider a hypothetical in which an individual is capable of light physical exertion as defined in the regulations but can only occasionally balance, stoop, kneel, climb, crouch or crawl and can perform only simple, repetitive tasks. The expert testified, in relevant part, that an individual with the same age, education, work history, and RFC as Plaintiff could not perform Plaintiff's prior work, but that he could perform other work, such as the representative jobs of cleaner, packing line worker, and sorter. AR 54.

The VE was asked to consider a second hypothetical in which an individual with the same age, education and work experience, but he can only lift and carry ten pounds occasionally, less than

3

ten pounds frequently, can stand and walk up to two hours in an eight-hour day, but in order to do so he must use a cane or some other assisted device and can sit a total of only four hours in an eight-hour workday. The VE testified that there would be no jobs available. AR 39-40.

At the conclusion of the hearing, the ALJ left the record open until October 21, 2009 for Plaintiff's counsel to submit additional medical records. AR 31, 56.

**Medical Record**

The entire medical record was reviewed by the Court. AR 195-438. The medical evidence will be referenced below as necessary to this Court's decision.

**ALJ Decision**

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff did not meet the disability standard. AR 18. More particularly, at Step 1, the ALJ found that Plaintiff had not worked since December 1, 2002, the alleged onset date of Plaintiff's disability. AR 17. At Step 2, the ALJ found that Plaintiff had the severe impairments of borderline intellectual functioning, obesity, torn meniscus of the right knee, and degenerative changes of both knees. AR 17. The ALJ found that these impairments did not meet or equal a listing at Step 3. AR 18.

Based on his review of the entire record, the ALJ determined that Plaintiff has the residual functional capacity ("RFC") to perform light work except that he is limited to occasional climbing, balancing, stopping, kneeling, crouching or crawling. AR 19. Plaintiff however retained the physical RFC to lift and carry 20 pounds occasionally and 10 pounds frequently; to sit, stand, and walk for 6 hours each in an 8 hour day; and perform simple repetitive tasks. AR 19. The ALJ also found that Plaintiff's allegations about his limitations were not entirely credible. AR 20-21. The ALJ subsequently found that Plaintiff could not perform his past relevant work. AR 21. However, at Step 5, the ALJ utilized the vocational expert's testimony and found that Plaintiff could perform occupations such as cleaner, packing-line worker, or sorter. AR 22. The ALJ therefore found at Step 5 that Plaintiff was not disabled under the Social Security Act. AR 23.

## SCOPE OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, this Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. § 405 (g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler,* 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Secretary applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

## REVIEW

In order to qualify for benefits, a claimant must establish that he is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c (a)(3)(A). A claimant must show that he has a physical or mental impairment of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

Here, Plaintiff argues that the ALJ erred in: (1) evaluating his treating physician's opinion and the medical record; (2) improperly assessing his credibility; and (3) failing to meet his burden at step five.

5

# DISCUSSION

### *A.     Physicians' Opinion Evidence*

Plaintiff argues that the ALJ improperly evaluated the medical evidence in the record. (Doc. 15 at 7). Specifically, Plaintiff argues the ALJ erred by rejecting his treating physician, Dr. Brubaker's, opinion and instead erroneously relied upon the opinion of the examining physician and state agency medical consultants. Defendant responds that the ALJ's consideration of the medical opinion evidence was proper.

Cases in this circuit distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians). As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant. *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1987). At least where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons. *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991). Even if the treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject this opinion without providing "specific and legitimate reasons" supported by substantial evidence in the record for so doing. *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983). Rejecting the treating doctor's opinion may be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct. *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir.1988). Therefore, a treating physician's opinion must be given controlling weight if it is well-supported and not inconsistent with the other substantial evidence in the record. *Lingenfelter v. Astrue*, 504 F.3d 1028 (9th Cir. 2007).

In *Orn v. Astrue,* 495 F.3d 625 (9th Cir. 2007), the Ninth Circuit reiterated and expounded upon its position regarding the ALJ's acceptance of the opinion an examining physician over that of a treating physician. "When an examining physician relies on the same clinical findings as a

treating physician, but differs only in his or her conclusions, the conclusions of the examining physician are not "'substantial evidence.'" *Orn,* 495 F.3d at 632; *Murray*, 722 F.2d at 501-502. "By contrast, when an examining physician provides 'independent clinical findings that differ from the findings of the treating physician, such findings are 'substantial evidence.'" *Orn*, 496 F.3d at 632; *Miller v. Heckler*, 770 F.2d 845, 849 (9th Cir.1985). Independent clinical findings can be either (1) diagnoses that differ from those offered by another physician and that are supported by substantial evidence, *see Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir.1985), or (2) findings based on objective medical tests that the treating physician has not herself considered, *see Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).

Here, the ALJ had four relevant medical opinions to consider: (1) Dr. Brubaker, Plaintiff's treating physician, 2) Dr. Stoltz, a state consultative examining physician, and 3) Drs. Khong and De la Rosa*,* two state agency non-examining physicians. With regard to the physician evidence the ALJ stated as follows:

> The medical record shows Mr. Garza rarely complained of knee pain and received very little treatment for knee pain between 2003 and 2009. In June 2008, Mr. Garza complained of knee pain and Dr. Brubaker stated Mr. Garza should have an arthorgram of both knees and possibly nerve conduction studies along with EMG testing and a referral to an orthopedic surgeon.
>
> In July 2007, consultative psychologist Dr. Spindell noted complaints of illiteracy, poor memory, forgetfulness, poor sleep, learning difficulty, and Alzheimer's. Upon examination, Mr. Garza's memory was within normal limits, and his affect was flat, but he did not appear depressed. On the Wechsler Adult Intellectual Scales, Third Edition Mr. Garza achieved a full scale IQ of 74. Dr. Spindell diagnosed borderline intellectual functioning and physical complaints. Dr. Spindell did not assess any work-related limitations. I have given this opinion substantial weight because it is consistent with the overall evidence of record, although evidence at the hearing showed Mr. Garza is more limited in the performance of detailed or complex tasks.
>
> In July 2007, consultative internist Dr. Stoltz noted complaints of diabetes, bilateral knee pain particularly with stair climbing and walking, asthma and arthritis. With respect to Mr. Garza's knees, Dr. Stoltz noted the range of motion was within normal limits, strength was normal and there were slight crepitations to both knees with full flexion and extension but no joint effusion or erythema. Dr. Stoltz diagnosed diabetes type II, bilateral knee pain, psychiatric, and asthma. He concluded Mr. Garza would have no restrictions on lifting, carrying, standing, walking, or sitting, and could occasionally kneel, crouch, and crawl. I have given this opinion substantial weight because it is consistent with the overall evidence, although evidence at the hearing showed Mr. Garza is more limited in lifting and carrying.
>
> The state agency concluded Mr. Garza's physical impairments were nonsevere, and his mental impairments allowed him to perform simple, repetitive tasks. I have given

>this opinion substantial weight, although new evidence at the hearing showed Mr. Garza was more limited in the ability to lift, carry, balance, stoop, kneel, climb, crouch, and crawl. (Citations omitted). AR 20-21.

Plaintiff argues that Dr. Brubaker's opinion was entitled to greater weight than the ALJ gave it. (Doc. 15 at 10). However, contrary to Plaintiff's assertion, the ALJ did not reject the medical opinion of his treating physician. AR 19-21. The ALJ noted that Plaintiff received treatment for a torn meniscus of the right knee and degenerative changes of both knees, and his decision does not contradict Dr. Brubaker's diagnoses. AR 20, 289. Specifically, Dr. Brubaker did not give an opinion on the severity of Plaintiff's torn meniscus, stating only that Plaintiff "should also have M.R. arthrogram of both knees to determine the severity of chondromalacia and meniscus tears." AR 289. Dr. Brubaker further stated that "[d]epending on the outcome of the diagnostic tests, [Plaintiff] may require nerve conduction studies [test used to determine whether the conduction of impulses along specific nerves is normal or pathologically slowed] along with EMG testing [electromyogram, a graphic record of muscle activity resulting from electrical stimulation]." AR 289. Thus, Dr. Brubaker did not give a medical opinion as to the severity of Plaintiff's impairments or restrictions but instead referred Plaintiff for further assessment based on his findings. AR 289. *Cf.* 20 C.F.R. § 416.927(a)(2) (2008) ("Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions"). Like Dr. Brubaker, the ALJ found that Plaintiff suffered from meniscus tears. AR 17.

The ALJ then relied on the medical opinion of examining physician Dr. Stoltz. Dr. Stoltz opined that "the claimant would have no restrictions on lifting, carrying, standing, walking or sitting. AR 237. However, Dr. Stoltz "would limit [Plaintiff] to occasional activities such as kneeling, crouching, and crawling" AR 237. The ALJ properly gave this opinion "substantial weight because it is consistent with the overall evidence." AR 21. Further, giving Plaintiff the benefit of the doubt, the ALJ stated that "evidence at the hearing showed [Plaintiff] is more limited in lifting and carrying" than Dr. Stoltz had stated. AR 21.

Dr. Stoltz's opinion was then affirmed by two state agency physicians. Dr. Khong reviewed Plaintiff's xrays and found no evidence of fracture, erosions or bony abnormalities. AR 257. "A [joint] effusion could not be ruled out but the clinical exam did not reveal any [joint] effusion. The only finding on exam was subjective c/o tibial pain. The [claimant] exhibited a normal gait at the [consultative exam]. A finding of not severe is affirmed." AR 257. Dr. De La Rosa found Plaintiff had "slight crepitus knees," but no limits in standing, walking, or sitting. AR 239. Both state agency doctors had x-rays to review at the time their opinions were rendered and both agency physicians agreed that Plaintiff's impairments were not severe.

Here, the ALJ presented a comprehensive summary and analysis of the medical evidence in determining Plaintiff's RFC. No physician found Plaintiff disabled. In fact, no physician opined that Plaintiff's physical impairments were severe. However, the ALJ, giving generous consideration of the overall medical evidence and subjective findings, found Plaintiff to be more limited than found by Dr. Stoltz and the state agency physicians. AR 21 (ALJ determined that "claimant is more limited in lifting and carrying").

The ALJ thoroughly considered all the medical and non-medical evidence. While Plaintiff points to his subjective complaints of pain, the medical evidence does not support a finding of disability. The Plaintiff is simply interpreting the evidence differently than the ALJ, but the ALJ's interpretation is reasonable and must be upheld. *Thomas*, 278 F.3d at 954. The ALJ's RFC is supported by substantial evidence and free of legal error.

B.   ***Medical Evidence of Other Impairments***

Next, Plaintiff argues that the ALJ should have considered the medical evidence supporting the effects of his obesity, sleep apnea, and asthma on his other impairments. (Doc. 15 at 14). According to Plaintiff, the ALJ improperly failed to consider the effects of his obesity at step four, despite having identified his obesity as a severe impairment at step two of the evaluation process.

Plaintiff does not cite to any medical records to support his position. He relies on Social Security Regulation ("SSR") 02-1p, which states in relevant part that obesity is a disease that must be considered when evaluating disability, and the "combined effects of obesity with other impairments can be greater than the effects of each of the impairments considered separately."

9

Here, the ALJ noted that obesity was indicated in the record, and found that while obesity was a severe impairment, it was not disabling. AR 18. The ALJ noted that Plaintiff has no impairment or combination of impairments that meets or medically equals a listed impairment. The ALJ acknowledged that under SSR 02-1p, he must consider obesity when considering Plaintiff's RFC. The ALJ concluded that he considered Plaintiff's obesity and found that it does not have a disabling impact "upon [Plaintiff's] co-existing impairments." AR 18. The ALJ's determination is supported by the record.

No physician indicated in the record that Plaintiff's obesity was medically significant or limited his functioning. The ALJ was limited to the record presented, and could not consider the effects of obesity on other impairments if physicians did not note any. Additionally, individuals with obesity do not necessarily suffer from the impairments for which obesity can be a risk factor. *See* SSR 02-01p, 2002 SSR LEXIS 1. The ALJ appropriately considered obesity in his decision.

At Step two of the sequential evaluation process, the ALJ found that Plaintiff had a history of diabetes, sleep apnea, and chronic obstructive pulmonary disease versus asthma. The ALJ concluded, however, that those impairments did not "cause more than minimal limitation" in Plaintiff's ability to perform "basic work activities, and are therefore nonsevere." AR 17.

With respect to Plaintiff's sleep apnea and asthma claims, neither Dr. Brubaker or any other physician rendered an opinion on whether or how Plaintiff's sleep apnea and asthma affected Plaintiff's residual functional capacity. Consultative psychologist Dr. Spindell, noted Plaintiff's complaints of "poor sleep." However, Dr. Spindell did not assess Plaintiff with any work-related limitations. AR 229. "The mere existence of an impairment is insufficient proof of disability." *Matthews v. Shalala*, 10 F.3d 678, 680 (9th Cir. 1993). A plaintiff bears the burden of producing medical evidence establishing the existence of an impairment, its severity, and how it affects the plaintiff's functioning. 20 C.F.R. § 404.1512 (c). Plaintiff has failed to meet his burden of proof, and substantial evidence supports the ALJ's conclusion that Plaintiff's sleep apnea and asthma as nonsevere impairments. As a result, the ALJ properly treated Plaintiff's claims of sleep apnea and asthma as nonsevere impairments.

   *C.*  *Credibility*

  Plaintiff next argues that the ALJ failed to provide clear and convincing reasons for rejecting his testimony. The ALJ found that Plaintiff was not entirely credible due to inconsistencies in his statements about his work and treatment history. According to Plaintiff, the inconsistencies found by the ALJ are not supported by the record. (Doc. 15 at 19). Defendant responds that the ALJ's credibility finding is supported by substantial evidence.

  A two step analysis applies at the administrative level when considering a claimant's subjective symptom testimony. *Smolen v. Chater*, 80 F.3d at 1281. First, the claimant must produce objective medical evidence of an impairment that could reasonably be expected to produce some degree of the symptom or pain alleged. *Id*. at 1281-1282. If the claimant satisfies the first step and there is no evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity of his symptoms only if he makes specific findings that include clear and convincing reasons for doing so. *Id*. at 1281. The ALJ must "state which testimony is not credible and what evidence suggests the complaints are not credible." *Mersman v. Halter*, 161 F.Supp.2d 1078, 1086 (N.D. Cal. 2001) ("The lack of specific, clear, and convincing reasons why Plaintiff's testimony is not credible renders it impossible for [the] Court to determine whether the ALJ's conclusion is supported by substantial evidence"); Social Security Ruling ("SSR") 96-7p (ALJ's decision "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and reasons for that weight").

  An ALJ can consider many factors when assessing the claimant's credibility. *See Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997). The ALJ can consider the claimant's reputation for truthfulness, prior inconsistent statements concerning his symptoms, other testimony by the claimant that appears less than candid, unexplained or inadequately explained failure to seek treatment, failure to follow a prescribed course of treatment, claimant's daily activities, claimant's work record, or the observations of treating and examining physicians. *Smolen v. Chater*, 80 F.3d at 1284; *Orn v. Astrue*, 495 F.3d at 638.

  The first step in assessing Plaintiff's subjective complaints is to determine whether Plaintiff's condition could reasonably be expected to produce the pain or other symptoms alleged. *Lingenfelter*

11

*v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007).  Here, the ALJ identified borderline intellectual functioning, obesity, torn meniscus of the right knee, and degenerative changes of the knees bilaterally as severe impairments.  AR 17.  He further found that:

> After considering the evidence of record, I find Mr. Garza's medically-determinable impairments can reasonably be expected to produce his alleged symptoms, but his statements about the intensity, persistence, and limiting effects of those symptoms are not credible to the extent they are inconsistent with my assessment of his residual functional capacity assessment. AR 20.

This finding satisfied step one of the credibility analysis.  *Smolen v. Chater*, 80 F.3d at 1281-1282.

Second, "In order to disbelieve a claim of excess pain, an ALJ must make specific findings justifying that decision." *Id*. (citing *Magallanes v. Bowen*, 881 F.2d at 755).  The findings must convincingly justify the ALJ's rejection of the plaintiff's excess pain testimony.  *Id*. at 602.  However, an ALJ cannot be required to believe every allegation of disabling pain.  "This holds true even where the claimant introduces medical evidence showing that he has an ailment reasonably expected to produce some pain." *Id*. at 603.

Specifically, here ALJ Larsen made the following findings:

> Mr. Garza is not fully credible.  He has received limited treatment consistent with the ability to perform light work.  His statements concerning his work history have been inconsistent.  He reported he had worked for 35 years, but his earning record does not reflect this history.  He reported having worked for the IRS for 20 years, but his earnings record shows a 12-year history and a 6-year history in the private sector as a truck driver and mover.  Mr. Garza reported working as a painter for nine years, but the earning record does not reflect this history.  Additionally, the medical record states Mr. Garza has been working odd jobs, which is consistent with the ability to perform light work.  In July 2007, Mr. Garza told Dr. Stoltz he was working as a laborer, which is consistent with the ability to perform light work.  Further, diminishing Mr. Garza's credibility, he has a history of alcohol abuse.  His current allegations are not consistent with rare complaints of knee pain in the medical record or with objective findings. AR 21. (Citations omitted).

In short, the ALJ provided a number of clear and convincing reasons that are supported by the record when concluding Plaintiff's subjective symptom testimony was less than credible.  These reasons include: (1) Plaintiff's continued work history throughout his alleged period of disability; and (2) Plaintiff's lack of candor regarding his alcohol and smoking habits. Further, there is evidence of malingering in the record.

First, the ALJ observed that Plaintiff made statements when seeking medical treatment that were inconsistent with his hearing testimony as well as his statements on his DIB and SSI

applications. AR 21. Plaintiff claimed that he was unable to work beginning December 1, 2002. AR 133, 138. Yet on numerous occasions after that date, Plaintiff represented himself as employed. For example, Plaintiff sought medical treatment on May 21, 2004 and told his doctor that he had "acute sudden shortness of breath" when he was admitted because "he was painting a house" and that he was "engaged in several housing renovation projects during his work" with "frequent exposure to paint solvents, paint scrapings, and secondary dust." AR 208. Plaintiff stated he had "noted some skin rashes episodically during his current work." AR 208. The doctor counseled Plaintiff regarding the potential for worsening problems "if he continues pulmonary exposure in his work." AR 210. He also advised Plaintiff to consult "with an occupational medicine specialist regarding his potential work place exposure" and to use "adequate pulmonary protection . . . during this type of work." AR 210.

In January 2006, Plaintiff again represented that he was employed when he sought treatment at the University Medical Center in Fresno, California for "mild to moderate" pain in his left knee which was sustained from "work during winter." AR 202.

In July 2007, Plaintiff told Dr. Stoltz that he was "currently employed as a laborer." AR 234. Also in July 2007, Plaintiff told Dr. Spindell that he had worked in August of 2006, prior to going to jail for one year. AR 228. Dr. Spindell stated that Plaintiff "is still looking for work and has done plastering, drywall [and] painting." AR 228.

In sum, the record contains inconsistent statements by Plaintiff regarding his work history. Acts which are inconsistent with a claimant's assertion of disability reflect negatively upon the Plaintiff's credibility. *Moisa v. Barnhart*, 367 F.3d 882, 885 (9th Cir. 2004). Further, absent a showing of deterioration, working after the onset of an impairment is some evidence of an ability to work. *See Goff v. Barnhart*, 421 F.3d 785, 793 (8th Cir. 2005).

Finally, the record contains evidence of malingering. State agency physician, Dr. De La Rosa, noted that there were inconsistencies between Plaintiff's reports and allegations. He questioned Plaintiff's credibility and opined that Plaintiff's subjective complaints were out of proportion with the objective findings. AR 240. The ALJ was entitled to reject Plaintiff's testimony because there was evidence of malingering. *See Benton ex rel. Benton v. Barnhart*, 331

F.3d 1030, 1040 (9th Cir. 2003); *see also Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001) ("ALJ gave a detailed explanation supporting" his finding that claimant was not credible, including pointing to a "doctor's observation that [claimant] showed 'poor effort'" on examination).

While, the Court agrees with Plaintiff that the ALJ may have improperly relied on Plaintiff's alcohol abuse as a basis to reject his credibility, because there is substantial evidence to support the ALJ's other conclusions, the credibility determination will not be disturbed. *See eg., Batson v. Barnhart*, 359 F.3d 1190, 1197 (9th Cir. 2004) (upholding ALJ's credibility determination even though one reason may have been in error). Accordingly, the ALJ did not arbitrarily discredit claimant's testimony and the findings are free of reversible legal error.

### D.     Step Five

Finally, Plaintiff argues that the ALJ did not meet his burden at step five because the hypothetical posed to the ALJ did not account for the fact that he is illiterate. The Court disagrees.

The ALJ found that Plaintiff "has at least a high school education and can communicate in English." AR 22. While Plaintiff testified that he cannot read and write, the ALJ did not agree. Specifically, the ALJ found that Plaintiff's mental impairment did not meet Listing 12.05 (mental retardation). The ALJ opined that Plaintiff does not meet paragraph B of Listing 12.05 because he does not have a valid verbal, performance, or full scale IQ of 59 or less. The ALJ noted that Dr. Spindell noted complaints of illiteracy, but "[u]pon examination found that [Plaintiff's] memory was within normal limits." AR 20. "On the Wechsler Adult Intellectual Scales, Third Edition [Plaintiff] achieved a full scale IQ of 74.[3]  Thus, Plaintiff's allegations of illiteracy were not adopted by the ALJ in his RFC finding. As a result, the hypothetical question posed to the VE accurately reflects all of Plaintiff's limitations.

The ALJ found Plaintiff could perform unskilled  light work except that he is limited to occasional climbing, balancing, stopping, kneeling, crouching or crawling, and can only perform simple, repetitive tasks. AR 19. The ALJ applied the medical-vocational guidelines as a framework and determined that jobs exist in significant numbers in the national economy that the Plaintiff can

---

[3]     On the WAIS-III a full scale IQ of 70-85 signifies borderline intellectual functioning. *Brown v. Secretary of HHS*, 948 F.2d 268, 270 (6th Cir. 1991).

perform. AR 17. The ALJ also questioned the VE who indicated that there were jobs available in the national economy that Plaintiff could perform.

Light work represents "substantial work capability compatible with making a work adjustment to substantial numbers of unskilled jobs, and thus generally provides sufficient occupational mobility even for severely impaired individuals who are not of advanced age and have sufficient educational competencies for unskilled work." *See* 20 C.F.R.§ 404, Subpart P, Appendix 2, § 202.00. Here, the ALJ included limitations to the VE that he considered were credible and based on substantial evidence. Thus, the ALJ met his burden at step five. *Osenbrock v. Apfel*, 240 F. 3d 1157, 1164-1165 (9th Cir. 2001) (An ALJ is not bound to accept as true restrictions set forth in a hypothetical if it is not supported by substantial evidence).

**RECOMMENDATION**

Based on the foregoing, the ALJ's decision is supported by substantial evidence and is free of legal error. It is recommended that judgment be entered against Plaintiff, Ricardo Garza, and in favor of Defendant Commissioner of Social Security.

These findings and recommendations will be submitted to the Honorable Lawrence J. O'Neill pursuant to the provisions of Title 28 of the United States Code section 636(b)(l). Within fifteen (15) days after being served with these findings and recommendations, the parties may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **June 27, 2012**                    /s/ **Barbara A. McAuliffe**
                                                            UNITED STATES MAGISTRATE JUDGE